UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAMELA ADAMS,

        Plaintiff,                                Hon. Ellen S. Carmody

v.                                                  Case No. 1:15-CV-709

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____/

## OPINION

        This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Supplemental Security Income (SSI) under Title XVI of the Social Security Act. On September 14, 2015, the parties agreed to proceed in this Court for all further proceedings, including an order of final judgment. (ECF No. 9).

        Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. For the reasons stated below, the Court concludes that the Commissioner's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**.

## **STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 38 years of age on her alleged disability onset date. (PageID.163). She successfully completed high school, but has no past relevant work. (PageID.48). Plaintiff applied for benefits on July 30, 2012, alleging that she had been disabled since February 17, 1998, due to bi-polar disorder, chronic back pain, insomnia, depression, anxiety, post-traumatic stress disorder, and high blood pressure. (PageID.163-64, 200). Plaintiff's application was denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (PageID.62-132). On July 16, 2013, Plaintiff appeared before ALJ Joseph Doyle with testimony being offered by Plaintiff and a vocational expert. (PageID.55-88). In a written decision dated February 14, 2014, the ALJ determined that Plaintiff was not disabled. (PageID.40-50). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (PageID.28-32). Plaintiff subsequently initiated this pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## **ANALYSIS OF THE ALJ'S DECISION**

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*,

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

 2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

 3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors. (20 C.F.R. §§ 404.1520(d), 416.920(d));

 4. If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

 5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffers from: (1) headaches; (2) a chronic pain disorder; (3) disorders of the back; (4) hypertension; (5) disorders of the hips; (6) depression; (7) a mood disorder; (8) complicated bereavement; (9) a panic disorder; (10) post-traumatic stress disorder; (11) an anxiety disorder; and (12) bi-polar disorder, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (PageID.42-44).

With respect to Plaintiff's residual functional capacity, the ALJ found that Plaintiff retained the ability to perform light work subject to the following limitations: (1) she can never climb ladders, ropes, or scaffolds; (2) she can only occasionally climb ramps or stairs; (3) she can only occasionally stoop, kneel, crouch, or crawl; and (4) she is limited to the performance of simple, routine, and repetitive tasks performed in a work environment where she would only have occasional interaction with the public and co-workers. (PageID.44).

The ALJ found that Plaintiff had no past relevant work at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, her limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires

more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned a vocational expert.

The vocational expert testified that there existed approximately 38,500 jobs in the state of Michigan and approximately 937,000 jobs nationwide, which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (PageID.83-87). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006). The ALJ concluded, therefore, that Plaintiff was not entitled to disability benefits.

**I.         The ALJ Properly Assessed Dr. Simmons' Opinion**

On September 17, 2013, Plaintiff's treating physician, Dr. Curtis Simmons completed a form regarding Plaintiff's "ability to do work-related activities." (PageID.386-87). Dr. Simmons reported that Plaintiff's ability to perform work activities was more limited than the ALJ concluded. The ALJ, however, found that the doctor's opinions "were not particularly credible." (PageID.47). Plaintiff argues that she is entitled to relief because the ALJ failed to articulate good reasons for discounting Dr. Simmons' opinions.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into her

medical condition.  *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).  An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record."  *Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data."  *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)).  The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence.  *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so.  *Gayheart*, 710 F.3d at 376.  Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule."  *Id.* (quoting *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)).  Simply stating that the

7

physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Gayheart*, 710 F.3d at 376-77.

Dr. Simmons reported that Plaintiff can occasionally carry 10 pounds and can frequently carry less than 10 pounds. (PageID.386). The doctor reported that Plaintiff can stand/walk for no more than 2 hours during an 8-hour workday. (PageID.386). With respect to whether Plaintiff required a sit-stand option, the doctor was "uncertain." (PageID.386). Dr. Simmons reported that Plaintiff can "rarely" twist, bend, crouch, or climb stairs. (PageID.387). On September 23, 2013, Dr. Simmons provided a statement to Plaintiff's counsel in which he stated that Plaintiff "has significant difficulty as far as with bending, stooping, reaching overhead, standing and walking and it would make it difficult for her to maintain gainful employment in any other job than a sit down type job." (PageID.389).

The ALJ offered several reasons for affording Dr. Simmons' opinions less than controlling weight. The ALJ noted that the doctor's opinions "were completely inconsistent with his treatment records, as he repeatedly failed to indicate that the claimant had the types of severe limitations he identified in his opinions." (PageID.46). This conclusion is supported by the record. Dr. Simmons repeatedly and consistently reported that the results of musculoskeletal examinations of Plaintiff were "normal" except for tenderness in her back or painful range of motion in her hips. (PageID.281-302, 337-46, 353-64). Dr. Simmons never reported findings which would support the opinions he later provided.

The ALJ also noted that "none of the claimant's other providers indicated she had these types of severe functional restrictions." (PageID.46). This conclusion is also supported by

the record. On May 22, 2013, Plaintiff was examined by Dr. Mark Russell, D.O. (PageID.350-52). An examination of Plaintiff's hips revealed "exquisite tenderness," but "normal strength," "full" range of motion and negative Patrick's test.² (PageID.351). X-rays of Plaintiff's hips revealed "mild" osteoarthritis. (PageID.351). As the ALJ observed no other care provider reported findings or expressed opinions which support Dr. Simmons' opinions. Finally, the ALJ observed that "there was no indication that Dr. Simmons performed specific functional testing that would have allowed him to reach the conclusions that he offered." (PageID.46). This conclusion is likewise supported by the record. In sum, the ALJ's decision to discount Dr. Simmons' opinions is supported by substantial evidence.

**II.         The ALJ's RFC is Supported by Substantial Evidence**

Plaintiff next argues that the ALJ's RFC assessment is not supported by substantial evidence. A claimant's RFC represents her ability to perform "work-related physical and mental activities in a work setting on a regular and continuing basis," defined as "8 hours a day, for 5 days a week, or an equivalent work schedule." Social Security Ruling 96-8P, 1996 WL 374184 at *1 (Social Security Administration, July 2, 1996); *see also*, *Payne v. Commissioner of Social Security*, 402 Fed. Appx. 109, 116 (6th Cir., Nov. 18, 2010). The ALJ's conclusion that Plaintiff can perform a wide range of light work on a regular and continuing basis is supported by substantial evidence.

---

² FABER (or Patrick) test is "a screening test for pathology of the hip joint or sacrum." *See* Special Tests of the Lower Extremity, available at https://www.verywell.com/lower-extremity-special-tests-2696470#step2 (last visited on May 18, 2016). The test is performed by placing the patient in the supine position and then flexing one leg and placing the foot of that leg on the opposite knee. The tester then slowly presses down on the superior aspect of the tested knee joint lowering the leg into further abduction. The motion performed as part of this test is referred to as FABER - **F**lexion, **AB**duction, **E**xternal **R**otation at the hip. The results are positive if the patient experiences "pain at the hip or sacral joint, or if the leg can not lower to point of being parallel to the opposite leg." *Id.*

As discussed above, the evidence concerning Plaintiff's physical impairments more than supports the ALJ's RFC assessment. As for Plaintiff's argument that the ALJ's RFC fails to sufficiently account for her emotional impairments, the Court is not persuaded. While the record reveals that Plaintiff suffers from certain emotional impairments, the evidence does not suggest that such impair Plaintiff to a greater degree than is reflected in the ALJ's RFC. Plaintiff's therapist, Dr. Marjaneh Rouhani, did not express any opinion that Plaintiff was limited to an extent greater than the ALJ recognized. (PageID.313-36, 409-18). Likewise, Dr. Rouhani's contemporaneous treatment notes do not suggest that Plaintiff is more limited than reflected in her RFC. (PageID.313-36, 409-18). In sum, the ALJ's RFC determination is supported by substantial evidence.

### III.       The ALJ Properly Developed the Record

At the administrative hearing, Plaintiff's counsel asserted that he had been trying without success to obtain Plaintiff's treatment records from Dr. Rouhani's office. (PageID.58-60). Counsel requested that the ALJ issue a subpoena to Dr. Rouhani to produce the records in question. (PageID.59). Shortly thereafter, however, counsel requested merely that the record remain open for an additional 30 days so that he could again attempt to obtain the records in question from Dr. Rouhani. (PageID.60). In response, the ALJ stated, "I'll hold the record open for 30 days, and let me know where you're at after that time." (PageID.60). When counsel responded by asking about a subpoena, the ALJ stated, "well, I'm not going to commit to doing that right now. Why don't you let me know where you're at after the 30 days." (PageID.60).

On August 13, 2013, less than one month after the administrative hearing, Plaintiff's counsel authored a letter to ALJ Doyle. (PageID.244-45). Asserting that his attempt to obtain the

records from Dr. Rouhani was unsuccessful, counsel again requested that the ALJ issue a subpoena to the doctor to obtain the subject records. (PageID.244-45). On January 30, 2014, the ALJ authored a letter to Plaintiff's counsel indicating that the Social Security Administration "secured additional evidence" from Dr. Rouhani which the ALJ proposed be entered into the record. (PageID.267-68).

Counsel responded that he did not object to the records in question being entered into the record. (PageID.270). Counsel further indicated, however, that there existed certain records from Dr. Rouhani which were not encompassed by the Commissioner's request to the doctor. (PageID.270). Specifically, counsel asserted that the record did not contain Dr. Rouhani's records concerning the time period from August 9, 2012, through July 15, 2013. (PageID.270). Counsel, therefore, requested that the ALJ "send an additional request to Dr. Rouhani asking that she submit those additional records." (PageID.270). The ALJ addressed this request in his opinion denying Plaintiff's application for benefits:

> After the hearing, the claimant requested the agency assist her in obtaining medical records from one of her treating providers Dr. Marjaneh Rouhani. The claimant alleged that she could not obtain these records on her own (9E, 10E, 14E). The agency then contacted Dr. Rouhani's office and was able to acquire additional records that were exhibited at 12F. Subsequently, the claimant alleges that the agency only obtained records from 7/15/13 through the present, and that there are additional records to be obtained from 8/9/12 to 7/14/13 (17E). After considering the request, the undersigned denies the claimant's request for additional development. The hearing occurred in July 2013 and the claimant has had ample time to obtain additional evidence. While she alleged some difficulty obtaining records from Dr. Rouhani's office, the agency was able to obtain records from Dr. Rouhani without substantive difficulty with a mere phone call, letter, and a polite request. Further, there is ample evidence in the claimant's record to proceed in issuing a decision. Finally, the record contains Dr. Rouhani's more recent records, which are adequate to demonstrate the claimant's mental health functioning after she began

11

> treatment with Dr. Rouhani.  Accordingly, the undersigned rejects claimant's request for further development of this case and issues the following decision.

(PageID.40).

Plaintiff argues that she is entitled to relief because the ALJ refused her request to issue a subpoena to Dr. Rouhani.  The Court disagrees.

It is well accepted that it is the claimant's "responsibility to provide medical evidence showing that [s]he is disabled." *Smith v. Commissioner of Social Security*, 2011 WL 3421538 at *2 (W.D. Mich., Aug. 4, 2011).  While the ALJ must ensure that every claimant receives a full and fair hearing, where a claimant is represented by counsel, as was the case presently, "the ALJ may ordinarily rely on counsel to present the claimant's case and to develop [her] claims." *Woelk v. Commissioner of Social Security*, 2014 WL 2931411 at *2 (E.D. Mich., June 30, 2014).

Moreover, an ALJ is not obligated to supplement the record with additional evidence unless the record as it then exists is insufficient to assess Plaintiff's residual functional capacity or otherwise resolve her claims.  *See, e.g., Allison v. Apfel*, 2000 WL 1276950 at *5 (6th Cir., Aug. 30, 2000); *Lamb v. Barnhart*, 85 Fed. Appx. 52, 57 (10th Cir., Dec. 11, 2003); *Haney v. Astrue*, 2010 WL 3859778 at *3 (E.D. Okla., Sept. 15, 2010); *Brown v. Commissioner of Social Security*, 709 F.Supp.2d 248, 257 (S.D.N.Y. 2010).  As is recognized, "how much evidence to gather is a subject on which district courts must respect the Secretary's reasoned judgment." *Simpson v. Commissioner of Social Security*, 2009 WL 2628355 at *8 (6th Cir., Aug. 27, 2009) (citation omitted).  As the court further observed, to obligate the Commissioner to obtain an absolute "complete record" in each case "literally would be a formula for paralysis." *Id.* (citation omitted).

The ALJ determined that the record before him was sufficient to resolve Plaintiff's claim for benefits.[3] Specifically, the record contains Dr. Rouhani's treatment records from July 2011 through August 2012 and July 2013 through February 2014. Plaintiff offers nothing suggesting that the doctor's treatment notes from August 2012 through July 2013 differed in any relevant manner from the records before the ALJ or that such records would have reasonably suggested a different outcome in this matter. Accordingly, this argument is rejected.

## CONCLUSION

For the reasons articulated herein, the Court concludes that the ALJ's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**. The Court further determines that appeal of this matter would not be taken in good faith. *See Smith v. Commissioner of Social Security*, 1999 WL 1336109 at *2 (6th Cir., Dec. 20, 1999); *Leal v. Commissioner of Social Security*, 2015 WL 731311 at *2 (N.D. Ohio, Feb. 19, 2015); 28 U.S.C. § 1915(a)(3). A judgment consistent with this opinion will enter.

Date: May 24, 2016                                            /s/ Ellen S. Carmody
                                                              ELLEN S. CARMODY
                                                              United States Magistrate Judge

---

[3] The Court notes that in his February 4, 2014 communication to the ALJ, Plaintiff's counsel seemed to agree with this conclusion, noting that "the psychiatric evidence currently in the file is sufficient to document a very significant impairment in Claimant's ability to maintain concentration, persistence and pace." (PageID.270).